# In the United States Court of Federal Claims

No. 11-007 C

(E-Filed Under Seal: June 10, 2011)[1]
(E-Filed with Redaction: June 16, 2011)

| | |
|---|---|
| GEAR WIZZARD, INC.,<br><br>Plaintiff,<br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Whether the Cancellation of Solicitations Designated as a Small Business Set-Aside was Proper; Whether the Agency's Decision to Solicit Offers on an Unrestricted Basis was Proper |

Charles E. Raley, Hilton Head Island, SC, for plaintiff.

Douglas Glenn Edelschick, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington, DC, for defendant.

OPINION AND ORDER

HEWITT, Chief Judge

This pre- and post-award bid protest is before the court after oral argument held on Wednesday, May 26, 2011 at 3:00 p.m. Eastern Daylight Time.[2] Plaintiff (Gear Wizzard

[1] This Opinion and Order was filed under seal on June 10, 2011, Docket Number (Dkt. No.) 58. The court instructed the parties to file any requests for the redaction of protected material on or before Wednesday June 22, 2011 at 12:00 noon Eastern Daylight Time. In response to the court's directive of June 10, 2011, defendant filed an unopposed motion to redact. Def.'s Unopposed Mot. to Redact Opinion (Motion), Dkt. No. 60, filed June 13, 2011. The Motion is GRANTED.

or GWI) is a small business concern and seeks a permanent injunction to prevent the U.S. Defense Logistics Agency (DLA), Defense Supply Center (DSCC), from proceeding with any award or performance on certain Requests for Quotations (the RFQs) by any business other than GWI, a declaration that the cancellation of Solicitation SPM7L3-11-Q-0043 (RFQ-0043 or the Original RFQ) was illegal, a declaration that a dissolution of the Small Business Set Aside (SBSA) for the RFQs was illegal and a permanent injunction to prevent DLA from dissolving the SBSA status for the RFQs. Pl.'s Mot. for J., Docket Number (Dkt. No.) 46, at 1.

Before the court are plaintiff's Complaint–Bid Protest [for Declaratory and Injunctive Relief] (plaintiff's Complaint or Pl.'s Compl.), Dkt. No. 1, filed January 4, 2011; plaintiff's Corrected Second Amended Complaint–Bid Protest [for Declaratory and Injunctive Relief] (plaintiff's Amended Complaint or Pl.'s Am. Compl.), Dkt. No. 42, filed April 21, 2011; Plaintiff's Motion for Judgment (plaintiff's Motion or Pl.'s Mot), Dkt. No. 46, filed April 26, 2011; plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Judgment (Pl.'s Mem.), Dkt. No. 46, filed April 26, 2011; Defendant's Motion to Dismiss, or, in the Alternative, Motion for Judgment upon the Administrative Record, and Defendant's Response to Plaintiff's Motion for Judgment upon the Administrative Record (defendant's Motion to Dismiss, defendant's Motion for Judgment on the Administrative Record or Def.'s Mot.), Dkt. No. 48, filed May 3, 2011; Plaintiff's Response to Defendant's Motions to Dismiss and for Judgment and to Defendant's Reply to Plaintiff's Motion for Judgment (Pl.'s Resp.), Dkt. No. 50, filed May 10, 2011; and Defendant's Reply in Support of Motion to Dismiss, or, in the Alternative, Motion for Judgment upon the Administrative Record (Def.'s Reply), Dkt. No. 52, filed May 16, 2011. Defendant filed the administrative record (AR) on January 11, 2011, Dkt. No. 16, pursuant to the court's Order of January 5, 2011, Dkt. No. 13.

For the reasons stated below, plaintiff's Motion is DENIED, defendant's Motion to Dismiss is DENIED and defendant's Motion for Judgment on the Administrative Record is GRANTED.

## I. Background

On October 12, 2010 defendant issued RFQ-0043 for the procurement of 533 shifter forks. AR 9-11 (RFQ-0043). Shifter forks were listed as "a critical application item" and are part of the shifting mechanism in M939 series five-ton trucks. AR 11 (RFQ-0043); AR 254 (Apr. 1, 2011 Contracting Officer Memorandum for Record (CO Memo)). The Original RFQ was issued as a small business set-aside, AR 9 (RFQ-0043); the estimated value of the Original RFQ was $73,551, AR 99 (DLA memo).

---

[2] The oral argument was recorded by the court's Electronic Digital Recording system (EDR). The times noted in citations to the oral argument refer to the EDR record of the oral argument.

Federal Acquisition Regulation (FAR) Part 13.000 applied to the Original RFQ because its estimated value fell below the "simplified acquisition threshold" of $150,000. FAR 13.000 (2010) (providing the scope of Part 13); see FAR 2.101 (defining "simplified acquisition threshold"). The purpose of FAR Part 13 "is to prescribe simplified acquisition procedures in order to--(a) Reduce administrative costs; (b) Improve opportunities for . . . small business concerns to obtain a fair proportion of Government contracts; (c) Promote efficiency and economy in contracting; and (d) Avoid unnecessary burdens for agencies and contractors." FAR 13.002. Taking into account the administrative cost of the procurement, "[t]he contracting officer must promote competition to the maximum extent practicable to obtain supplies and services from the source whose offer is the most advantageous to the Government," FAR 13.104, and, before making an award under FAR Part 13, "the contracting officer must determine that the proposed price is fair and reasonable," FAR 13.106-3(a).

The Original RFQ also falls under FAR 19.502-2, which applies to acquisitions of supplies valued between $3,000 and $150,000. FAR 19.502-2. FAR 19.502-2(a), which is referred to as the "rule of two," Def.'s Mot. 5, states, in relevant part:

> Each acquisition of supplies . . . exceeding $3,000 . . . but not over $150,000 . . . is automatically reserved exclusively for small business concerns and shall be set aside for small business unless the contracting officer determines there is not a reasonable expectation of obtaining offers from two or more responsible small business concerns that are competitive in terms of market prices, quality, and delivery. . . . If the contracting officer receives only one acceptable offer from a responsible small business concern in response to a set-aside, the contracting officer should make an award to that firm.

FAR 19.502-2(a); see DLA Land and Maritime Acquisition Guide (DAG) 19.502-2(b), Dkt. No. 51-1. FAR 19.502-2(c),which is referred to within both the FAR and the DAG as the "nonmanufacturer rule," provides, in relevant part: "For small business set-asides other than for construction or services, any concern proposing to furnish a product that it did not itself manufacture must furnish the product of a small business manufacturer . . . ."[3] FAR 19.502-2(c); DAG 19.102-101(b)(1)-(2); DAG 19.502-

[3] The United States Small Business Administration (SBA) may grant either a waiver or an exception to the nonmanufacturer rule, FAR 19.502-2(c); however, neither is applicable here. SBA grants exceptions to the nonmanufacturer rule "where the anticipated cost of the procurement will not exceed $25,000." Id.; FAR 19.102(f)(7). Because none of the RFQs in this case anticipated the procurement cost to be below the $25,000 threshold, the exception is inapplicable here. See Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for J. upon the Administrative R., and Def.'s Resp. to Pl.'s Mot. for J. upon the Administrative R. (Def.'s Mot.), Dkt. No. 48, at 6 ("The SBA has not made an exception to the nonmanufacturer rule that would apply to the acquisition of shifter forks in this case, which exceeds $25,000.").

2(b)(ii)(a); see DAG 19.000-101(b) ("Generally to be eligible for award under a total small business set-aside, a concern must offer only end items manufactured or produced by small business concerns in the United States or its outlying areas."). "In these cases, set-asides are allowed when offers are expected from at least two small business concerns offering the product of the same small business concern (for example a small manufacturer and one of its dealers or two small dealers offering the product of the same small manufacturer)." DAG 19.502-2(b)(ii)(a) (emphasis in original); see AR 99 (DLA Memo) (quoting DAG 19.502-2(b)(ii)(a)).

The Original RFQ specified that only two manufacturers offered approved shifter forks: GWI, a small business concern, and Meritor Heavy Vehicle Systems, LLC (Meritor), a large business concern. AR 11 (RFQ-0043); see AR 254 (CO Memo) (stating that GWI is a small business concern and that Meritor is a large business concern); see also AR 260 (Attachment to DD Form 2579, History of NSN-8717 (Procurement History)) (stating that GWI became an approved source on July 13, 2009)). Defendant received nineteen quotes in response to the Original RFQ; two quotes were from large business concerns and seventeen quotes were from small business concerns. AR 254 (CO Memo). The quotes ranged in price from [ * * * ]. AR 131 (Abstract of Quotes); see AR 254-55 (CO Memo).

On November 29, 2010, nearly five weeks after the October 26, 2010 closing date for offers, AR 9 (RFQ-0043), the DLA buyer of shifter forks, Elizabeth Hanlon, prepared a "Memo for file" that sought the dissolution of the SBSA associated with the Original RFQ, AR 99 (Hanlon Memo); AR 254-55 (CO Memo). Ms. Hanlon "reviewed the procurement and made a determination that the solicitation should not have been set-aside to begin with." AR 254 (CO Memo). Citing DAG 19.502-2(b)(ii)(a), Ms. Hanlon reasoned that there was not a "reasonable expectation that two or [more] small business concerns were going to offer the product of [a] small business manufacturer." AR 255 (CO Memo); AR 99 (Hanlon Memo); see FAR 19.502-2(a).

Ms. Hanlon's memo was never reviewed or approved by the contracting officer, Richard Matz (Mr. Matz).[4] AR 255 (CO Memo); id. at 257 (identifying Mr. Matz as the

---

SBA grants waivers to the nonmanufacturer rule if it "finds that there are no small business manufacturers." FAR 19.502-2(c); DLA Land and Maritime Acquisition Guide (DAG) 19.102-101(b)(2). Because Gear Wizzard, Inc. (GWI) is a small business manufacturer of shifter forks, waiver of the nonmanufacturer rule is inapplicable here. See Def.'s Mot. 6 ("The SBA has not granted a waiver of the nonmanufacturer rule, either as a class waiver for acquisitions of shifter forks in general, or as an individual waiver for this particular acquisition of shifter forks.").

[4] Proper withdrawal of a small business set-aside determination requires two actions by the contracting officer. The contracting officer must "give[] written notice to the agency

contracting officer). Ms. Hanlon believed, however, that the SBSA had been dissolved and "proceeded as if the solicitation had been issued on an unrestricted basis." AR 255 (CO Memo). On December 15, 2010 defendant awarded the contract to Science Applications International Corporation (SAIC), a large business concern, which offered shifter forks manufactured by AxleTech International (AxleTech). AR 254-55 (CO Memo); see AR 133-51 (SAIC Purchase Order). At the time of the award to SAIC, the DLA product specialist believed that AxleTech had been previously approved as a source of shifter forks. AR 159, 165 (Dec. 20, 2010 DLA email correspondence between Meritor and DLA); AR 183 (Dec. 21, 2010 DLA email). However, AxleTech's shifter forks were not acceptable because their dimensions "prevent[ed] the fork from fitting on the transfer clutch." AR 205 (May 21, 2009 DSCC email); AR 255 (CO Memo) (stating that the SAIC offer of AxleTech-manufactured shifter forks "had been erroneously determined to be [] acceptable").

On December 16, 2010 Meritor contacted Ms. Hanlon and "advised that the award was improper because SAIC [was] not supplying either an approved Meritor or GWI [shifter fork]." AR 256 (CO Memo). The following day, GWI objected to the award and requested a debriefing pursuant to FAR 15.506. AR 180 (Dec. 17, 2010 GWI email). The court received GWI's Complaint on January 4, 2011. See Compl. 1.

After recognizing that that the AxleTech part was "technically unacceptable," AR 213 (Dec. 30, 2010 DLA email), defendant cancelled its award to SAIC on January 3, 2011, AR 229 (SAIC Cancellation Order); AR 216 (Jan. 3, 2011 DLA email), and canceled the Original RFQ shortly thereafter, see AR 261 (Procurement History) (stating that RFQ-0043 was canceled); Pl.'s Resp. 2 (stating that the AR does not indicate when defendant cancelled RFQ-0043, "but it would seem eminently reasonable to presume that such cancellation did not occur before the cancellation/termination" of the award on January 3, 2011); EDR 4:27:00-14 (Mr. Edelschick) (representing that RFQ-0043 was cancelled between January 3 and January 5, 2011).

Defendant subsequently issued, and ultimately canceled, at least three additional shifter fork acquisition solicitations in January and March of 2011.[5] See Def.'s Opp'n to

---

small business specialist and the SBA procurement center representative . . . stating the reasons" for the withdrawal, FAR 19.506(a), and must "prepare a written statement supporting any withdrawal or modification of a small business set-aside and include it in the contract file," FAR 19.506(c).

[5] The facts pertaining to RFQ-0333, RFQ-0423 and RFQ-0606 are provided as background information. As the court's Order of May 20, 2011 states, "The inclusion in the record of the publication of RFQ-0333, RFQ-0423 and RFQ-0606, as well as any notices of cancellations associated with these RFQs, simply documents facts recognized by both parties and will not affect the appropriate standard of review." Order of May 20, 2011, Dkt. No. 57, at 7 (citing Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009)).

Pl.'s Mot. to Supplement the Administrative R. (Def.'s Opp'n), Dkt. No. 49, at 2-3 (referring to RFQ-0333 as the Second RFQ, RFQ-0423 as the Third RFQ and RFQ-0606 as the Fourth RFQ). On January 11, 2011 defendant "attempted to re-procure the shifter forks through unrestricted competition by issuing Request for Quotations SPM7L3-11-Q-0333 [(RFQ-0333 or Second RFQ)]."[6] Id. at 2; AR 237 (RFQ-0333) (listing January 11, 2011 as the issue date). Defendant canceled the Second RFQ ten days later after discovering documentation problems. Def.'s Opp'n 2; Pl.'s Corrected Updated Mot. to Supp. the R., Dkt. No. 43, Ex. 6 (Notice of Cancellation of RFQ-0333). On January 26, 2011 defendant's automated procurement system issued SPM7L3-11-Q-0423 (RFQ-0423 or Third RFQ) in error. Def.'s Opp'n 2; Pl.'s Corrected Updated Mot. to Supp. the R., Ex. 7 (RFQ-0423). "Because it was not ready to proceed with a re-procurement at that time," Def.'s Opp'n 2, defendant canceled the Third RFQ on February 1, 2011, Def.'s Notice, Dkt. No. 28, at 1. In late March of 2011, defendant's automated procurement system again issued a solicitation in error, SPM7L3-11-Q-0606 (RFQ-0606 or Fourth RFQ), and it was canceled shortly thereafter. Def.'s Opp'n 3; see Pl.'s Corrected Updated Mot. to Supp. the R., Ex. 9 (Apr. 5, 2011 DLA email).

On January 22, 2011 GWI emailed the Acting Associate Director of DLA's Small Business Programs Office, Vikki Hawthorne, to "protest any dissolution of the Small Business Set Aside status for . . . any . . . Shifter Fork procurement." AR 269-70 (Jan. 22, 2011 GWI email). GWI claimed that "at least two or more small businesses are ready, willing and able to submit offers to supply Shifter Forks manufactured by GWI," and that GWI had received "several requests for quote[s] on its Shifter Forks." Id. at 270. In response, Ms. Hawthorne requested a list of these small business concerns, AR 269 (undated DLA email), "so that the contracting officer could conduct market research and confirm the[] ability [of the small business concerns] to supply the Gear Wizzard part," AR 262 (Procurement History).

In an email dated February 5, 2011, GWI responded:

> At least 18 small businesses submitted offers on DSCC's last aborted acquisition of the subject Shifter Forks, NSN 2520-01-136-8717. Since then, even though DSCC has rapidly and repeatedly canceled at least 4

---

[6] Plaintiff maintains that RFQ-0333 resulted in three solicitations, "each of which were quickly cancelled because the first did not exclude the unapproved part, the second because it was a set-aside, and the third because, although the [d]efendant wanted to make it unrestricted, the SBA had not granted approval." Mem. of Points and Authorities in Supp. of Pl.'s Mot. for J. (Pl.'s Mem.), Dkt. No. 46, at 1-2. Defendant characterizes RFQ-0333 as "just one RFQ that was 'temporarily pulled' for 'administrative' reasons." Def.'s Mot. 3 n.3 (quoting AR 251 (Jan. 11, 2011 DLA email)). The court refers to RFQ-0333 as one RFQ without regard to whether, in fact, RFQ-0333 resulted in three solicitations. The parties' differing characterizations do not bear on the outcome of the case.

> Shifter Fork acquisition solicitations so fast that offeror interest was almost prevented, many small businesses have sought quotes from GWI to supply the Shifter Forks.

AR 268 (Feb. 5, 2011 GWI email). GWI then listed the names of twenty-seven small businesses that could be "reasonably expected" to offer GWI's shifter fork. Id.

Ms. Hawthorne dismissed the usefulness of this list, noting that until this list "can be validated, the contracting officer has no basis to set-aside the requirement for small business concerns." AR 267 (undated DLA email). Ms. Hawthorne repeated her request for a list of "small businesses that are ready, willing and able to submit offers to supply the Shifter Forks manufactured by GWI." AR 267 (undated DLA email). GWI subsequently provided defendant with the names and addresses of three small business concerns: Pioneer Ind., Inc. (Pioneer), JGILS, LLC (JGILS) and Kampi Components Co., Inc. (Kampi). AR 267 (Feb. 12, 2011 GWI email).

Ms. Hanlon emailed the three small business concerns and requested answers to the following questions:

> 1.) If [shifter forks are] set-aside for small business concerns are you able to quote the Gear Wizzard part number GWI-C0107?
>
> 2.) What would be your estimated delivery timeframe?
>
> 3.) What would be your estimated price . . . ?

AR 278-79 (Feb. 15, 2011 Hanlon email to Pioneer); AR 275 (Feb. 15, 2011 Hanlon email to JGILS); AR 273 (Feb. 17, 2011 Hanlon email to Kampi). The vice president of Pioneer responded that he was not certain that GWI would provide a quote purely for informational purposes. See AR 277 (Feb. 17, 2011 Pioneer email) ("I don't know if [GWI is] willing to provide pricing as an estimate at this time."); id. (Feb. 15, 2011 Pioneer email) ("I don't know if [GWI will] quote it for informational purposes . . . ."); see also AR 278 (Feb. 15, 2011 Pioneer email) ("[GWI] can't give us accurate pricing or lead time without a [quantity]."). The president of JGILS responded tersely: "We cannot quote this guy." AR 275 (Feb. 15, 2011 JGILS email). A customer service representative for Kampi provided the most detailed response, explaining that because GWI quotes "direct on this item," GWI's quotation would "more than likely[] be more competitive" than Kampi's. AR 272 (Feb. 17, 2011 Kampi email). The representative requested that the government refrain from soliciting Kampi for items that the government "intend[s] to award to the manufacturer anyway." Id.

Defendant also prepared a small business set-aside history and a "contract and solicitation history" for the shifter forks (collectively, the Procurement History). AR

260-63 (Procurement History). According to the Procurement History, only three solicitations were posted between July 13, 2009, when GWI became an approved source of shifter forks, and October 12, 2010, when DLA posted RFQ-0043. Id. at 260-61. All three solicitations were posted as total small business set-asides under FAR Part 13. Id. at 261. Two of these three solicitations were valued between $25,000 and $150,000, and DLA awarded GWI both procurements. Id. (discussing RFQ-0326 and RFQ-0409). The third solicitation was valued below $25,000, which made it eligible for SBA's exception to the nonmanufacturer rule, see supra note 3 (discussing the exception to the nonmanufacturer rule for solicitations valued below $25,000), and DLA awarded a small business concern offering the product of a large business concern, AR 261 (discussing RFQ-0233). For all solicitations up to and including RFQ-0043 for which GWI was listed as an approved source, GWI was only the small business concern to offer the product of a small business manufacturer. See id. In all cases, GWI offered its own approved shifter fork. Id. at 260.

Based on its market research and the Procurement History, defendant determined that it did not "have a reasonable expectation of obtaining offers from two or more responsible small business concerns that are competitive in terms of market prices, quality and delivery that will offer the approved part manufactured by Gear Wizzard." AR 263 (Procurement History). Defendant concluded that "the procurement should be solicited on an unrestricted basis," id., and a new DD Form 2579 "Small Business Coordination Record" was prepared for the issuance of an unrestricted solicitation,[7] AR 258-59 (DD Form 2579).

Defendant shared its market research and Procurement History with the United States Small Business Administration (SBA). AR 258-79 (DD Form 2579 and Attachment). A representative of SBA concurred in defendant's recommendation that the procurement be solicited on an unrestricted basis. AR 258 (DD Form 2579). On April 1, 2011 defendant issued an unrestricted Request for Quotations SPM7L3-11-Q-0780 (RFQ-0780, Fifth RFQ or New RFQ) for the procurement of 335 shifter forks (NSN-8717), with a closing date for offers on May 31, 2011, AR 280-82 (RFQ-0780), with an estimated value of $37,114.65, AR 257 (CO Memo).

In Count I of plaintiff's Amended Complaint, containing plaintiff's post-award protest, plaintiff maintains that defendant "has violated and continues to violate" FAR 19.502-2(a), Am. Compl. ¶ 44, which states that "[i]f the contracting officer receives only one acceptable offer from a responsible small business concern in response to a set-aside, the contracting officer should make an award to that firm," when defendant failed to award the Original RFQ to GWI, id. (quoting FAR 19.502-2(a)) (internal quotation marks

[7] The purpose of DD Form 2579 is to document the contracting officer's set-aside decision. DAG 19.4(1). "DD Form 2579 is required to be prepared and coordinated prior to the issuance of the solicitation . . . ." DAG 19.4(1)(a) (emphasis omitted).

omitted). Plaintiff maintains that the award of the Original RFQ to SAIC "was admittedly an illegal procurement from a large business dealer on a small business set-aside for an unapproved Shifter Fork." Id. ¶ 48. According to plaintiff,

> Defendant admits that GWI was the lowest priced responsive and responsible small business offeror on RFQ-0043 for actually approved Shifter Forks and, therefore, was and at all time[s] has been entitled to and required to be issued the award, inasmuch as GWI's quote was the only acceptable offer from a responsible small business concern to supply a small business manufactured part and quotes from Meritor's specified vendor network for Government sales all exceed GWI's quote on RFQ-0043.

Id. ¶ 49.

In Count II of plaintiff's Amended Complaint, containing plaintiff's pre-award protest, plaintiff argues that dissolution of the SBSA for shifter forks violates the mandate that SBSAs are required for procurements "value[d] between $25,000 and $150,000, where at least two small businesses are expected to make offers to supply [] Shifter Forks manufactured by a small business (GWI)." Id. ¶ 52.[8]

Count III of plaintiff's Amended Complaint argues that an unrestricted New RFQ is illegal under FAR 19.502-2(a) because "at least two small businesses are reasonably expected to make offers to supply Shifter Forks manufactured by GWI." Id. ¶ 54.

Plaintiff seeks from the court a judgment that: (1) permanently enjoins any award or performance by any business other than by GWI on the First through Fifth RFQs; (2) declares that the cancellation of the First RFQ without an award to GWI was illegal; (3) declares that a dissolution of the SBSA for shifter fork procurements "is unlawful, arbitrary, capricious, and erroneous;" and (4) permanently enjoins the dissolution of the SBSA status for shifter fork procurements. Pl.'s Mem. 2.

## II. Legal Standards

### A. Bid Protest Standard of Review

[8] Plaintiff also contends that any SBSA dissolution would violate the Competition in Contracting Act and Small Business Act, which "requires the Government to maintain full and open competition by aiding, counseling, protecting and preserving small business in competitive procurements." Corrected Second Am. Compl.–Bid Protest [for Declaratory and Injunctive Relief], Dkt. No. 42, ¶ 52. Because plaintiff failed to offer any support for these contentions, see generally Pl.'s Mem.; Pl.'s Mot. for J., Dkt. No. 46; Pl.'s Resp. to Def.'s Mots. to Dismiss and for J. and to Def.'s Reply to Pl.'s Mot for J. (Pl.'s Resp.), Dkt. No. 50, the court does not address these contentions in this Opinion and Order.

The Tucker Act, as amended by the Administrative Dispute Resolution Act (ADRA), 28 U.S.C. § 1491(b)(1) (2006), confers jurisdiction on this court:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). The court may "entertain such an action without regard to whether suit is instituted before or after the contract is awarded." Id.

"A bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The first step involves demonstrating error, that is, showing that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law. Id. The second step involves determining whether the error was prejudicial. Id.

To demonstrate prejudice in a post-award protest, the protestor "must show that there was a 'substantial chance' it would have received the contract award absent the alleged error." Banknote Corp. of Am., Inc. United States (Banknote), 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001)). The post-award bid protest "substantial chance" test "envisions a review of the contract award or bid evaluation process to determine what might have occurred if the government had not erred." Weeks Marine, Inc. v. United States (Weeks Marine I), 79 Fed. Cl. 22, 35 (2007) (internal quotations omitted), aff'd in relevant part, Weeks Marine, Inc. v. United States (Weeks Marine II), 575 F.3d 1352 (Fed. Cir. 2009). Because the development of facts at the time of the protest is more limited in the pre-award context, see Medical Dev. Int'l, Inc. v. United States, 89 Fed. Cl. 691, 701 (2009), "it is difficult for a prospective bidder/offeror to make the showing of prejudice that [is] required in post-award bid protest cases," Weeks Marine II, 575 F.3d at 1361. Accordingly, to establish prejudice in the context of a pre-award bid protest, the plaintiff must show only "that an unreasonable agency decision created a non-trivial competitive injury which can be redressed by judicial relief." Weeks Marine I, 79 Fed. Cl. at 35 (internal quotations omitted).

Under the first step, the court reviews a bid protest action under the standards set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706. 28 U.S.C. § 1491(b)(4); NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). According to the APA, an agency's decision is to be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Bannum, 404 F.3d at 1351; Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir. 2004); Impresa Construzioni Geom. Domenico Garufi v.

United States (Impresa), 238 F.3d 1324, 1332 (Fed. Cir. 2001); Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000).

When a challenge is brought on the theory that the agency lacked a rational basis for its decision, "the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." Banknote, 365 F.3d at 1351 (internal quotation omitted); see Advanced Data Concepts, 216 F.3d at 1058 ("This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citation omitted)). The rational basis standard of review is highly deferential, PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010), and an agency's decision must be sustained if it has a rational basis, Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The reviewing court may not substitute its judgment for that of the agency. Id. The court need not consider whether the agency is correct or whether the court would have reached the same decision as the agency, but whether there was a reasonable basis for the agency's actions. Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) ("If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." (internal quotation omitted)).

In order to challenge a decision on the basis of a violation of a regulation or procedure, the plaintiff "must show a clear and prejudicial violation of applicable statutes or regulations." Impresa, 238 F.3d at 1333 (internal quotation and citation omitted).

After demonstrating that an error occurred, under the second step of the bid protest procedure, the plaintiff must show that the error was prejudicial. Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) (citations omitted); see Alfa Laval Separation, Inc. v. United States (Alfa Laval), 175 F.3d 1365, 1367 (Fed. Cir. 1999). If the court fails to find error, there is no prejudice, and the government's decision must be left undisturbed. See Alfa Laval, 175 F.3d at 1367.

B. Jurisdiction and Mootness

"A case is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" Rice Servs., Ltd. v. United States, 405 F.3d 1017, 1019 n.3 (Fed. Cir. 2005) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). "The mootness doctrine originates from the case or controversy requirement of Article III of the United States Constitution." CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 688 (1999) (internal quotation omitted). Although the United States Court of Federal Claims (Court of Federal Claims) is an Article I court, it "applies the same standing requirements enforced by other federal courts created under Article III." Weeks

Marine II, 575 F.3d at 1359 (quoting Anderson v. United States, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003)) (internal quotation marks omitted).

Mootness "is a question of subject matter jurisdiction and may be raised at any time." CW Gov't Travel, Inc. v. United States, 46 Fed. Cl. 554, 556 (2000) (citing North Carolina v. Rice, 404 U.S. 244, 246 (1971)); see United States Court of Federal Claims Rule (RCFC) 12(b)(1) ("[A] party may assert . . . by motion" the defense of "lack of subject-matter jurisdiction."). If the court determines that it lacks subject-matter jurisdiction, the court must dismiss the action. RCFC 12(h)(3). The party invoking the jurisdiction of the court bears the burden of establishing jurisdiction by a preponderance of the evidence. Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

### C. Motions for Judgment on the Administrative Record

Rule 52.1 provides for judgment on the administrative record "[w]hen proceedings before an agency are relevant to a decision in a case" before the court. RCFC 52.1(a). RCFC 52.1 does not address the standards and criteria the court is to apply in cases decided pursuant to RCFC 52.1 because "[t]he standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases." RCFC 52.1 rules committee note (2006). Accordingly, the standards of review and burdens of proof and persuasion are set by the terms of the applicable substantive law--the APA as interpreted and applied in binding precedent. 28 U.S.C. § 1491(b)(4); see supra Part II.A.

### D. Standard for Permanent Injunctive Relief

With respect to bid protests, the Tucker Act permits the court to "award any relief that the court considers proper, including . . . injunctive relief." 28 U.S.C. § 1491(b)(2). "Establishing legal and prejudicial error does not automatically translate into injunctive relief." IDEA Int'l, Inc. v. United States, 74 Fed. Cl. 129, 137 (2006) (internal quotation omitted). To obtain a permanent injunction, a plaintiff must succeed on the merits and show by a preponderance of the evidence: "(1) that it will suffer irreparable harm if injunctive relief is not awarded; (2) that granting the relief serves the public interest; and (3) that the harm to be suffered by it outweighs the harm to the Government and third parties." United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312, 323 (1998) (citing FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)); see Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1327 (Fed. Cir. 2008).

## III. Discussion

### A. Defendant's 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant argues that "Counts I and II along with Gear Wizzard's arguments concerning the legality of the set-aside withdrawal, the SAIC contract award, and the Original RFQ are all moot." Def.'s Mot. 13. Defendant admits that the award of the Original RFQ to SAIC was illegal. Id. at 12. That illegality is the reason DLA canceled the award and opted to start over with a new procurement. Id. Defendant contends that DLA's actions "obviate any risk to plaintiff of another award based upon either the withdrawn set-aside or the Original RFQ."[9] Id. at 13 (citing CCL Serv. Corp., 43 Fed. Cl. at 690 ("[C]ancellation of the solicitation prevents the reinstatement of any award to [the awardee] under the original solicitation, so the dispute over the award is resolved and will not reoccur.")). Defendant argues that GWI "cannot obtain any further relief from this [c]ourt respecting the cancelled contract[s,] and plaintiff is free to compete for an award pursuant to the new RFQ." Id. (citing, inter alia, CW Gov't Travel, 46 Fed. Cl. at 559 ("There is no other injunctive or declaratory relief that this court could award under this solicitation, precisely because it was canceled."); Bannum, Inc. v. United States, 56 Fed. Cl. 453, 459 (2003) ("Courts have been virtually unanimous in declining to direct the award of contracts, believing that this decision is properly left to the discretion of the contracting agency.")).

According to defendant, one of the reasons the contracting officer sought a new procurement was because of DLA's failure to properly withdraw the set-aside requirement in accordance with FAR 19.506. Id. at 12. FAR 19.506 provides:

> If, before award of a contract involving a small business set-aside, the contracting officer considers that award would be detrimental to the public interest (e.g., payment of more than a fair market price), the contracting

[9] In its Motion, defendant claims that DLA cancelled its award to SAIC on January 3, 2011 and that the cancellation of the award occurred prior to plaintiff's filing of this protest. Def.'s Mot. 3. Plaintiff filed its Complaint on January 4, 2011, Compl., Dkt. No. 1, at 1, and contends that "everything in Defendant's Motions . . . dated after January 3, 2011[] constitutes post-litigation allegations," Pl.'s Resp. 2 (internal citations omitted); see id. at 3 ("[T]his protest action was clearly brought before the [d]efendant's proper cancellation/termination of [its award to SAIC] and cancellation of RFQ-0043."). Plaintiff cites to an attached letter, dated December 31, 2010, to the Clerk of Court for the United States Court of Federal Claims from plaintiff's attorney referencing the enclosed Complaint for this action. Id. at 1. The Clerk of Court received and filed plaintiff's Complaint, which was dated December 30, 2010, on January 4, 2011. See Compl. 4-5.

Defendant counters that plaintiff "misses the point." Def.'s Reply in Support of Mot. to Dismiss, or, in the Alternative, Mot. for J. upon the Administrative R. (Def.'s Reply), Dkt. No. 52, at 2. According to defendant, "The protest of the cancelled RFQs is moot because those solicitations have, in fact, been cancelled by the agency and Gear Wizzard cannot obtain any further relief." Id. The court finds that, with respect to defendant's mootness argument, whether plaintiff initiated this protest before or after DLA's cancellation of the award to SAIC is irrelevant. The court may examine whether the cancellation was proper.

> officer may withdraw the small business set-aside determination . . . . The contracting officer shall initiate a withdrawal of an individual small business set-aside by giving written notice to the agency small business specialist and the SBA procurement center representative . . . stating the reasons.

FAR 19.506(a). FAR 19.506 also requires the contracting officer to "prepare a written statement supporting any withdrawal or modification of a small business set-aside and include it in the contract file." FAR 19.506(c).

On November 29, 2010 Ms. Hanlon, the buyer, prepared a memorandum seeking the dissolution of the SBSA associated with the Original RFQ. AR 99 (Hanlon Memo). Ms. Hanlon's memorandum explained that the Original RFQ should not have been solicited as an SBSA because "there was not a reasonable expectation that two or [more] small business concerns were going to offer the product of [a] small business manufacturer." AR 255 (CO Memo); AR 99 (Hanlon Memo); see FAR 19.502-2(a). Although Ms. Hanlon explained the rationale for withdrawing the set aside in her memorandum, the contracting officer neither signed the memorandum nor gave "written notice to the agency small business specialist and the SBA procurement center representative . . . stating the reasons." See FAR 19.506(a); see also FAR 19.506(c). According to defendant, "Based on these and other errors, the contracting officer determined it was necessary to start over with a new procurement." Def.'s Mot. 13 (citing AR 256-57 (CO Memo)).

Defendant argues that Parcel 49C Ltd. Partnership v. United States (Parcel 49C), 31 F.3d 1147 (Fed. Cir.1994), upon which plaintiff relies for its demand that the court declare DLA's "conduct or decisions to be irrational, unreasonable, or unlawful and issue an injunction to restore the status quote ante any such actions or decisions," Pl.'s Mem. 14-15, is inapplicable here, Def.'s Mot. 14; see Def.'s Reply 2 ("Parcel 49C did not grant as relief a directed contract award of the sort demanded by Gear Wizard here."). In Parcel 49C the agency cancelled the solicitation after making an award to the plaintiff. 31 F.3d at 1149. The Court of Federal Claims found that the government's cancellation of the solicitation "was merely a pretext for accommodating [a different agency's] displeasure with the selection of [plaintiff as the awardee]," id. at 1151, and issued an injunction requiring the agency "to proceed with award of the solicitation," id. at 1149.

The United States Court of Appeals for the Federal Circuit (Federal Circuit) affirmed the injunction, concluding that there was no valid reason for cancelling the procurement. Id. at 1151. The Federal Circuit explained that the Court of Federal Claims "did not order the award of the contract to [plaintiff]. Instead, the trial court properly enjoined the illegal action and returned the contract award process to the status quo ante any illegality." Id. at 1153. The Federal Circuit recognized that the award process was incomplete and that the injunction "merely restores the posture of the process before the

illegal cancellation." Id. The Federal Circuit further held that "[t]he Government retain[ed] the power to proceed with its award process or to terminate the award process for any legal reason." Id. at 1154.

Defendant argues that, unlike the plaintiff in Parcel 49C, GWI is protesting DLA's "decision to cancel an award to SAIC and re-solicit bids from all parties who wish to compete." Def.'s Mot. 14; see Def.'s Reply 2 ("In Parcel 49C and the other cases cited by Gear Wizzard, the Court enjoined cancellations of awards to the protestor; here, the agency never awarded a contract to Gear Wizzard in the first place."). Defendant maintains that GWI "does not (and cannot) allege that the agency's actions were the product of bias against Gear Wizzard; hence, the sort of injunctive relief that the [c]ourt awarded in Parcel 49C is not available here." Def.'s Mot. 14-15. Defendant concludes that plaintiff's "protest of the cancelled RFQs is moot and Counts I and II should be dismissed." Id. at 15.

Plaintiff agrees that "if a case is moot to the extent that there is no longer an active case or controversy, then it should [] be dismissed."[10] Pl.'s Resp. 7 n.1.a. Plaintiff argues, however, that "GWI was the lowest priced responsible small business offeror to supply [an] approved small business manufactured product on RFQ-0043, a perfectly viable and legal small business set-aside to which GWI was therefore entitled to the award under the law." Id. Plaintiff explains, "An unauthorized buyer belatedly interjected an unapproved large business manufactured product and an unlawful large business offeror and, although, after this protest the [d]efendant cancelled he patently unlawful award, [d]efendant also unlawfully cancelled RFQ-0043 and a maze of subsequent solicitation cancellations." Id. Plaintiff argues that "[d]efendant is not permitted to cancel its way out of the consequences of its illegal actions." Id.; see id. at 5 ("Defendant's entire argument boils down to asserting that the [g]overnment can cancel its way out of whatever illegal actions it has undertaken, regardless of the consequences. If this is the law, then we could eliminate all of the statutes and all of the precedents governing pre-and post-award protests and go home.").

It appears to the court that defendant's mootness argument requires an analysis of the merits of plaintiff's case. The court agrees that Parcel 49C is inapposite. In Parcel 49C, the agency erroneously cancelled a valid award made pursuant to a properly structured solicitation. 31 F.3d at 1151. As the court discusses in detail in Part II.B.1, below, the Original RFQ here was flawed from the outset, and the agency acted within its discretion to terminate it.

---

[10] Plaintiff's Response states: "No one can argue that, if a case is moot to the extent that there is no longer an active case or controversy, then it should not be dismissed." Pl.'s Resp. 7 n.1.a (emphasis added). Given that plaintiff's briefs include numerous grammatical errors, and that inclusion of the word "not" in the quoted sentence would render the statement inconsistent with the principles of mootness, the court has removed the word "not" from the portion of plaintiff's statement quoted in the text of the opinion.

B. Parties' Cross Motions for Judgment on the Administrative Record

1. Defendant's Cancellation of RFQ-0043 and Subsequent RFQs

Plaintiff contends that the Original RFQ "contained no deficiency whatsoever" and should not have been cancelled. Pl.'s Resp. 1; see Pl.'s Mem. 15 ("[T]here was nothing improper or illegal about RFQ-0043."). Plaintiff also argues that it "had an absolute right to the award" of the Original RFQ. Pl.'s Mem. 15. "[A]s the lowest priced authorized small business manufacturer or dealer offeror of an approved Shifter Fork," plaintiff claims that GWI was entitled to the award. Id. at 10; see Pl.'s Resp. 7 n.1.c. ("Defendant unlawfully cancelled a fully viable and legal RFQ-0043 to which GWI was lawfully entitled to the award.").

As support for its argument that GWI was entitled to the award of the Original RFQ, plaintiff cites FAR 19.502-2(a), Pl.'s Mem. 15; Pl.'s Resp. 2-3, which provides, in part: "If the contracting officer receives only one acceptable offer from a responsible small business concern in response to a set-aside, the contracting officer should make an award to that firm," FAR 19.502-2(a). Plaintiff also cites Mr. Matz's memorandum dated April 1, 2011, which indicates that GWI was "the only quoter eligible for award [of the Original RFQ] because GWI was a small business concern offering as the manufacturer of its approved part." AR 254 (CO Memo). According to plaintiff, this provision applies when, as was the case with RFQ-0043, offers to a solicitation are received. EDR 3:23:40-24:09 (Mr. Raley).

Plaintiff requests that the court declare DLA's "conduct or decisions to be irrational, unreasonable, or unlawful and issue an injunction to restore the status quo ante any such actions or decisions."[11] Pl.'s Mem. 14-15 (citing Parcel 49C, 31 F.3d at 1153). Plaintiff also requests that the court permanently enjoin the award of the original RFQ and any other subsequent RFQS to anyone other than GWI. Pl.'s Mot. 4; Pl.'s Mem. 16.

The administrative record contains an April 1, 2011 memorandum in which Mr. Matz, the contracting officer, identifies three errors associated with the award to SAIC. Def.'s Mot. 7-8, 18 (citing AR 256-57 (CO Memo)). Defendant contends that these errors "reasonably led [the contracting officer] to conclude that the agency should start over with a new procurement." Def.'s Mot. 18 (citing AR 256-57 (CO Memo)). The memo states that on December 30, 2010, the contracting officer decided to cancel the

[11] Plaintiff also alleges that the Second, Third and Fourth RFQs "were issued and quickly cancelled with no explanation other than the apparent need to avoid a small business award to GWI." Pl.'s Mem. 14. Defendant counters that plaintiff fails to "advance any meaningful arguments concerning" these RFQs. Def.'s Mot. 15. The court agrees that plaintiff's contention is without support in the administrative record.

order with SAIC because of the following errors: (1) the Original RFQ should have been solicited as unrestricted, (2) DLA failed to properly dissolve the Original RFQs SBSA in accordance with FAR 19.506 and (3) RFQ-0043 "should have been amended to place the offerors on notice that the Axle[T]ech part was approved in order to afford all offerors the opportunity to quote on the part."[12] AR 256 (CO Memo). Defendant claims that any of these errors "could have been sufficient as a rational basis for the agency to cancel [the Original RFQ] and start over," and that "[w]hen these errors are considered together, it is beyond cavil that the agency had a rational basis for starting over again." Def.'s Mot. 18-19. Although neither party has filed an objection to the use of the documentation related to the New RFQ--such as the April 1, 2011 CO Memo--to the Original RFQ, it is far from clear that it would proper, as defendant's briefing suggests, for the court to rely on a post-hoc rationalization for the cancellation of the SAIC award and the termination of the Original RFQ. Cf. Axiom Res. Mgmt, Inc. v. United States, 564 F.3d 1374 (Fed. Cir. 2009).

Both parties characterize the cancellation of RFQ-0043 in terms of motive. See EDR 3:31:39-33:45 (colloquy between the court and Mr. Raley, in which Mr. Raley argues that, although not necessarily supported in the record, Mr. Raley can see no explanation for DLA's cancellation of RFQ-0043 and solicitation of the New RFQ other than DLA's desire to bypass small business and accept SAIC's "lowball" offer); EDR 4:00:00-00:05 (Mr. Edelschick, arguing that the contracting officer was "motivated solely by a good faith effort to follow the law").

The Procurement History and the market research in the administrative record make an adequately supported showing that RFQ-0043 should not have been issued as an SBSA. By contrast, there is nothing in the administrative record that supports plaintiff's view that the cancellation of RFQ-0043 was a pretext for the ultimate dissolution of the SBSA.

The administrative record shows that the award of the Original RFQ to SAIC contained at least two significant errors. First, although the Original RFQ was issued as a small business set aside, defendant nevertheless awarded the contract to a large business concern. Second, the awardee was offering an unapproved product manufactured by AxleTech. The administrative record indicates that it was the second defect that prompted the contracting officer to cancel the Original RFQ. On December 30, 2010 Mr. Matz received an email from DLA's Senior Counsel, which states:

---

[12] The court finds Mr. Matz's characterization of the third error associated with the Original RFQ puzzling, given the fact that the AxleTech part was not approved. In fact, Mr. Matz later states that the order with SAIC "needed to be canceled because it allowed the awardee to supply a non[-]conforming part." AR 257 (CO Memo).

> The problem is the AxleTech part (that we previously bought) is technically unacceptable. See attached documents.
>
> That is why I said that a statement similar to the following needs to be inserted in the PID/AID/POT:[13] "AxleTech Part number 3296-C-107 is not acceptable." Or something needs [to be] done that will prevent future product specialists from approving this item for award as "previously supplied[.]"
>
> As far as what action is to be taken. SAIC's contract needs to be canceled. Hopefully we can get a no-cost cancellation.
>
> <u>The only question is whether we want [to] just cancel the requirement and start over or make an award to the best value offeror that is providing a technically acceptable part.</u>

AR 217 (Dec. 30, 2010 DLA email) (emphasis added) (footnote added). On January 3, 2011 a contracting officer notified DLA's Senior Counsel that the SAIC purchase order was being cancelled. AR 213 (Jan. 3, 2011 DLA email).

The December 30, 2010 email from DLA's Senior Counsel is the most relevant and closely contemporaneous document in the AR regarding the cancellation of RFQ-0043. The email proposed two options for dealing with the non-conforming AxleTech part: start over by issuing a new RFQ or "make an award to the best value offeror that is providing a technically acceptable part." AR 217 (Dec. 30, 2010 DLA email). Both options were reasonable given the AxleTech error, and it appears to the court that Mr. Matz chose the former in order to "prevent future product specialists from approving [the AxleTech part] for award as 'previously supplied.'" <u>See</u> <u>id.</u> The fact that plaintiff would have preferred Mr. Matz to have made an "award to the best value offeror that is providing a technically acceptable part," <u>id.</u>, is not relevant to Mr. Matz's decision. It does not appear that Mr. Matz was offered an alternative justification for cancellation, namely, that the solicitation did not properly notify offerors that the AxleTech part was unacceptable. <u>See</u> <u>id.</u>

---

[13] The court understands PID to be an abbreviation of "procurement item description," <u>see</u> DIBBS User Manual, DLA Internet Bid Board System, Release 2.2.2b, at 85 (June 2008) <u>available at</u> www.defensecastingtoolkit.com/resources/BSMDIBBSUserGuide.pdf (defining PID under Glossary), AID to be an abbreviation for "acquisition identification description," <u>see</u> <u>id.</u> at 81 (defining AID under Glossary); <u>see also</u> AR 19 (RFQ-0043) (defining AID under Section L DLAD 52.217), and POT to be an abbreviation of "Purchase Order Text," <u>see</u> Defense Logistics Agency (DLA) Master Solicitation for Automated Simplified Acquisitions (Part 13), Revision 28, at 18 (Dec. 2008) <u>available at</u> http://www.docstoc.com/docs/50970965/DLA_Automated_Master_Solicitation_Archive_28 (defining POT under DLAD 52.211-9063).

Plaintiff argues that it "had an absolute right to the award" of the original RFQ under FAR 19.502-2(a). Pl.'s Mem. 15. Defendant disagrees. Def.'s Reply 4. FAR 19.502-2(a) states, in relevant part:

> Each acquisition of supplies . . . is automatically reserved exclusively for small business concerns and shall be set aside for small business unless the contracting officer determines there is not a reasonable expectation of obtaining offers from two or more responsible small business concerns that are competitive in terms of market prices, quality, and delivery. . . . If the contracting officer receives only one acceptable offer from a responsible small business concern in response to a set-aside, the contracting officer should make an award to that firm.

FAR 19.502-2(a).

Defendant first argues that the "snippet of language in section 19.502-2(a)" relied upon by plaintiff does not apply if "'the contracting officer determines there is not a reasonable expectation of obtaining offers from two or more responsible small business concerns that are competitive.'" Def.'s Reply 4 (quoting FAR 19.502-2(a)). According to defendant, because DLA "'at no time' had such 'a reasonable expectation' of competition in connection with [the Original RFQ]," Def.'s Reply 4 (quoting AR 256-57 (CO Memo)), plaintiff's reliance on FAR 19.502-2(a) is inapposite, id. Defendant claims that, if DLA had placed an order with GWI under the Original RFQ "at a time when the agency already had determined that the Original RFQ was improper," DLA "arguably would have abused its discretion." Def.'s Mot. 22 (citing AR 256 (CO Memo)).

Defendant also contends that:

> [t]his case is unlike a situation where the agency does have a reasonable expectation of receiving two or more quotes from small businesses offering the product manufactured by a small business and properly sets aside the procurement for small business, but for whatever reason, the agency only receives one such quote from a responsible firm. Under those circumstances, not present here, the agency normally would place an order with the firm that submitted the quote.

Def.'s Mot. 22-23 (emphasis in original) (citing FAR 19.502-2(a)). Defendant's position is that here, however, DLA "did not have a reasonable expectation of receiving two or more quotes from small businesses offering the product manufactured by a small business, and the agency concluded that the Original RFQ was improperly set aside for small business." Id. at 23 (emphasis in original) (citing AR 99 (Ms. Hanlon Memo); AR 256 (CO Memo); AR 262 (Procurement History)). Defendant concludes that GWI's

argument "that the agency violated the law by trying to adhere to it makes no sense." Id.[14]

Defendant argues in the alternative that FAR 19.502-2(a) "is not mandatory and does not direct the agency to make an award to any particular firm or to make any award at all." Def.'s Reply 4 (citing FAR 19.502-2(a)). As defendant correctly points out, FAR 19.502-2(a) employs "should," a permissive term that "reserves discretion to the agency." Def.'s Reply 4 (citing United States v. UPS Customhouse Brokerage, Inc., 575 F.3d 1376, 1382 (Fed. Cir. 2009) (comparing "will," which is "a mandatory term, not a discretionary one," with "discretionary terms such as 'should'" when interpreting a different federal regulation)); 3 Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 57:3, at 30 (7th ed. 2008) ("'Should' generally denotes discretion and should not be construed as 'shall.'"); see Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 649 (2001) ("[I]n everyday discourse, 'shall' is used to denote an affirmative command or obligation whereas 'should,' by contrast, is used to denote a request or suggestion."). The court agrees with defendant that the regulations do not compel the agency to make an award to GWI.[15]

---

[14] Defendant attempts to show that DLA recognized that the Original RFQ should not have been set aside at the time of the cancellation of the procurement. This effort is unpersuasive.

Although Ms. Hanlon, the DLA buyer, determined that dissolution of the Original's RFQ's SBSA was proper on November 29, 2010, AR 99 (Hanlon Memo); see supra Part III.A (discussing Hanlon Memo), the administrative record suggests that the contracting officer, Mr. Matz, did not fully embrace this issue until after he had cancelled the Original RFQ because of the AxleTech error. See AR 213-18 (DLA emails). In any event, defendant's efforts are irrelevant to the determination of the dispute.

[15] Defendant also argues that GWI "does not have any legally cognizable expectation of receiving a contract based upon its quote in response to the Original RFQ." Def.'s Mot. 21. Under FAR 13.004(a), see supra Part I (discussing the application of FAR Part 13 to the Original RFQ), "[a] quotation is not an offer and, consequently, cannot be accepted by the Government to form a binding contract. Therefore, issuance by the Government of an order in response to a supplier's quotation does not establish a contract." FAR 13.004(a). Instead, "The order is an offer by the Government to the supplier to buy certain supplies or services upon specified terms and conditions," and "[a] contract is established when the supplier accepts the offer." Id. Moreover, the government may "withdraw, amend, or cancel its offer" once it issues an order. FAR 13.004(c).

According to defendant, "Gear Wizzard merely submitted a quotation, which is 'not an offer,' and the Government did not issue an order to Gear Wizzard, which merely would have been 'an offer by the Government.'" Def.'s Mot. 21 (quoting FAR 13.004(a)). Defendant maintains that "[e]ven if the Government had made an offer to Gear Wizzard by placing an order, the Government still would have had the legal right to 'withdraw, amend, or cancel its

2. Defendant's Dissolution of the SBSA for Shifter Fork Procurements

Plaintiff requests that the court declare that the dissolution of SBSA status for the "subject procurements is unlawful, arbitrary, capricious, and erroneous," and permanently enjoin the dissolution of SBSA status for shifter fork procurements. Pl.'s Mem. 2. Plaintiff maintains that GWI received ten requests for quotation from small businesses to supply shifter forks for the cancelled Second RFQ. Id. at 11. Plaintiff further argues that DLA's sudden cancellation of the Third RFQ "again left [GWI] with no opportunity to provide quotes in response to the Requests for Quotations from other small businesses." Id.

Defendant maintains that the contracting officer's decision to issue the New RFQ through unrestricted competition is rational. Def.'s Mot. 18. Defendant states that the contracting officer's decision that no reasonable expectation existed that at least two small businesses would submit offers "was based upon a detailed analysis of the procurement history and the results of recent market research documented in the [AR]." Id. at 19 (citation omitted). Declaring that "'competition is the bedrock principle of procurement law,'" id. at 22 (quoting Tyler Constr. Grp. v. United States, 83 Fed. Cl. 94, 99 (2008), aff'd, 570 F.3d 1329 (Fed. Cir. 2009)), defendant argues that GWI's claim that DLA is required to set aside the subject RFQ for small business "is tantamount to requiring a sole source contract without meaningful competition—gaming the system—in clear derogation of Federal law," id.

Defendant also disputes GWI's speculation that "as many as ten or more small business firms might compete in the future with offers of Gear Wizzard's shifter forks," noting that, "to date, none of them have done so." Id. at 20 (citing AR 262 (Procurement History)). According to defendant, GWI declined DLA's "request for contact information for all but three of the firms, and those three firms indicated that they were not likely to compete." Id. at 20-21 (citing AR 263 (Procurement History), 266-69 (DLA and GWI emails)). Defendant concludes, and the court agrees, that GWI fails to "point to any 'hard facts' in the record that would be necessary to impeach the agency's good faith analysis of this fact intensive issue." Id. at 21 (citations omitted).

---

offer' without penalty at any time prior to its acceptance." Id. at 21-22 (quoting FAR 13.004(c)). Defendant concludes that GWI was not entitled to the award of the Original RFQ and "remains free to compete for an award in an unrestricted competition pursuant to the New RFQ." Id. at 22.

Because the court finds that the phrase in FAR 19.502-2(a) relied upon by plaintiff "reserves discretion to the agency," see Def.'s Reply 4, the court does not resolve whether GWI has a "legally cognizable expectation of receiving a contract based upon its quote in response to the Original RFQ," see Def.'s Mot. 21.

According to the Procurement History, three previous procurements of shifter forks had been set aside for small business. AR 261 (Procurement History) (referring to RFQ-0326, RFQ-0409 and RFQ-0233). The first procurement issued as a SBSA followed GWI's approval as a source of shifter forks, so it was reasonable for DLA "to expect that two or more of the many small business concerns that had previously supplied the Meritor part would likely offer the newly approved Gear Wizzard part." AR 261 (discussing RFQ-0326). The Procurement History states that the second procurement should have been "solicitated as unrestricted, because the estimated value of the procurement was in excess of $25,000 . . . and the prior acquisition . . . demonstrated that there was no reasonable expectation that two or more small business concerns were going to offer the product of [a] small business manufacturer." Id. (discussing RFQ-0409). Finally, because the value of the third procurement was estimated to be below $25,000, it fell within the exception to the nonmanufacturer rule and was awarded to a small business concern that offered Meritor's part. Id. (discussing RFQ-0233) (citing FAR 19.201(f)(7)).

Based on the Procurement History, which includes the fact that DLA has never received two or more quotes from small businesses offering shifter forks manufactured by a small business concern, DLA concluded that the Original RFQ should have been solicited as unrestricted. AR 262 (discussing RFQ-0043). The court agrees that DLA "had a rational basis for its finding that the Original RFQ erroneously had been designated as a set aside." Def.'s Reply 3 (citing AR 262 (Procurement History)).

Moreover, the contracting officer's market research indicates that it was difficult for other small businesses to compete with GWI's price on its own product. In response to GWI's January 22, 2011 email protesting the dissolution of the SBSA "for . . . any . . . Shifter Fork procurement," AR 269-70 (Jan. 22, 2011 GWI email), the Acting Associate Director of DLA's Small Business Programs Office, Ms. Hawthorne, requested a list of these small business concerns, AR 269 (undated DLA email), "so that the contracting officer could conduct market research and confirm their ability to supply the Gear Wizzard part," AR 262 (Procurement History). In an email dated February 5, 2011, GWI provided Ms. Hawthorne with the names of twenty-seven small businesses that could be "reasonably expected" to offer GWI's part. AR 268 (Feb. 5, 2011 GWI email). GWI also noted that "[a]t least 18 small businesses submitted offers on [DLA's] last aborted acquisition" of shifter forks. Id.

Apparently dissatisfied with this list of businesses, Ms. Hawthorne repeated her request for a list of "small businesses that are ready, willing and able to submit offers to supply the Shifter Forks manufactured by GWI." AR 267 (undated DLA email). GWI ultimately provided Ms. Hawthorne with the names and addresses of three small businesses: Pioneer Ind., Inc. (Pioneer), JGILS, LLC (JGILS) and Kampi Components Co., Inc. (Kampi). AR 267 (Feb. 12, 2011 GWI email).

Ms. Hanlon contacted each of these three businesses and inquired: "If [shifter forks are] set-aside for small business concerns are you able to quote the Gear Wizzard part number GWI-C0107?" AR 278-79 (Feb. 15, 2011 Hanlon email to Pioneer); AR 275 (Feb. 15, 2011 Hanlon email to JGILS); AR 273 (Feb. 17, 2011 Hanlon email to Kampi). Pioneer stated that it doubted GWI would be "willing provide pricing as an estimate at this time." AR 277 (Feb. 17, 2011 Pioneer email). JGILS simply responded: "We cannot quote this guy." AR 275 (Feb. 15, 2011 JGILS email). Kampi's response was more detailed, explaining that GWI quotes "direct on this item," and that, therefore, GWI's quote would "more than likely[] be more competitive" than Kampi's. AR 272 (Feb. 17, 2011 Kampi email). The representative requested that the government refrain from soliciting Kampi for items that the government "intend[s] to award to the manufacturer anyway." Id. Kampi's representative further stated:

> Kampi does our best to help with the needs of our government customer, however it has become cost prohibitive to constantly submit and subsequently update bids when the reality of the situation is that we will not receive the award. With that being said[,] yes[,] we are interested in quoting assuming our quotation is actually being considered. We are unable to provide an estimated delivery or unit price until we have a quantity.

Id.

Relying on this market research and the Procurement History, DLA determined that it did not "have a reasonable expectation of obtaining offers from two or more responsible small business concerns that are competitive in terms of market prices, quality and delivery that will offer the approved part manufactured by Gear Wizzard," and that the new procurement should be issued as unrestricted. AR 263 (Procurement History). Accordingly, DLA prepared a new DD Form 2579 "Small Business Coordination Record" recommending that the procurement be solicited on an unrestricted basis. AR 258-59 (DD Form 2579).

DLA shared its DD Form 2579, market research and the Procurement History with the SBA.[16] AR 258-79 (DD Form 2579 and Attachment). A representative of SBA concurred in defendant's recommendation that the procurement be solicited on an unrestricted basis. AR 258 (DD Form 2579). On April 1, 2011 defendant issued an unrestricted New RFQ for the procurement of 335 shifter forks (NSN-8717), with a

---

[16] Plaintiff alleges that, although the DD Form 2579 "accurately reported the content of the previous responses of JGILS and Pioneer, it did not completely report the content of Kampi's response that they were interested in quoting." Pl.'s Mem. 13. Defendant counters that DLA attached to the DD Form 2579, which was shared with the SBA, the full copy of Kampi's response. Def.'s Mot. 23. The court agrees that DLA's disclosures to the SBA regarding the New RFQ appear to be "complete and accurate." Id. at 24.

closing date for offers on May 31, 2011. AR 280-82 (RFQ-0780). The estimated value of the Fifth RFQ is $37,114.65. AR 257 (CO Memo).

"The decision not to set aside a solicitation for small business concerns is a matter of business judgment within the contracting officer's discretion and, as such, must be upheld unless the Court finds the decision to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." Benchmade Knife Co. v. United States, 79 Fed. Cl. 731, 738 (2007) (internal quotation omitted); see Admiral Towing & Barge Co., B-291849 et al., 2003 WL 22309106, at *3 (Comp. Gen. Mar. 6, 2003). "While the use of any particular method of assessing the availability of small businesses is not required, and measures such as prior procurement history, market surveys, and/or advice from the agency's small business specialist and technical personnel may all constitute adequate grounds for a contracting officer's decision not to set aside a procurement, the assessment must be based on sufficient facts so as to establish its reasonableness." Rochester Optical Mfg. Co., B-292247 et al., 2003 WL 21884877, at *3 (Comp. Gen. Aug. 6, 2003) (internal citation omitted); see MCS Mgmt., Inc. v. United States, 48 Fed. Cl. 506, 511, aff'd, 25 F. App'x 957 (Fed. Cir. 2001). The court finds that the contracting officer's decision to cancel the Original RFQ and issue the New RFQ on an unrestricted basis was reasonable, rationally based on sufficient facts and not in violation of law.

### C. Permanent Injunctive Relief Not Warranted

To obtain a permanent injunction, a plaintiff must succeed on the merits and show by a preponderance of the evidence: "(1) that it will suffer irreparable harm if injunctive relief is not awarded; (2) that granting the relief serves the public interest; and (3) that the harm to be suffered by it outweighs the harm to the Government and third parties." United Int'l Investigative Servs., 41 Fed. Cl. at 323 (citing FMC Corp., 3 F.3d at 427). Because plaintiff has not succeeded on the merits of its case, it is unnecessary for the court to determine whether GWI has established the remaining three factors.

## IV. Conclusion

For the foregoing reasons, the court DENIES plaintiff's Motion, DENIES defendant's Motion to Dismiss and GRANTS defendant's Motion for Judgment on the Administrative Record. The Clerk of Court is directed to ENTER JUDGMENT in favor of defendant. No costs.

IT IS SO ORDERED.

s/ Emily C. Hewitt
Chief Judge